*80 . The case was heard by judge Thompson. After hearing the evidence and the counsel, the judge pronounced the following decree :
This bill was instituted for the purpose of recovering alimony front the defendant, Michael Dfcvall, upon the suggestion of his having ill-treated, abused and driven from his house, the complainant Harriet" Devall. It appears that a treaty of marriage had been entered into between the parties; that a marriage settlement which has been recited in the bill, had been duly executed, and the marriage solemnized. It further appears that they lived together in great harmony for some time, that af-terwards altercations took place, which finally led to a separation. In order to form an opinion on this case, - it is necessary to advert to the testimony which has been introduced relative to the conduct of the complainant, as that forms a very essential ingredient. The witnesses who have testified to that fact, concur in saying that she uniformly acted with propriety and attention towards Michael Devall, so far as they knew; and in fact it was admitted by the defendant in several conversations, that she was kind and affectionate, and that they could live happily and contentedly, were it not for the interference of his children by a former marriage. The,next subject for the enquiry of the court, is the extent of the abuse which Mrs. Devall received from her husband ; for the purpose of ascertaining whether she was compelled or had sufficient justification for leaving the house; and on this point we must have reference to the testimony of Miss Lucy Parsons: She says, that on Christmas day, the defendant sent for the witness, that a disturbance arose between him and his wife; that Michael Devall used vile and abusive language to her, struck her with a cane, brandished a sword over her head, and threatened to take her life. It appears by the evidence of Mr. Brown, that ho went with Mrs. Devall, when she returned home to regain the possession of the house; and when sho demanded it, Jacob M. Devall stood in the door with a pistol in his hand, and said, if she came into the house he would shoot her. She was therefore, *81 obliged to leave the place and return to her brother’s, Jacob SÍ. Derail, at that time, and his father after-wards, asserted that he had ordered him so to do. it was further proved, that the defendant made frequent duela-rations, that the complainant should not live with him. The defendant’s cousscl endeavored to support their de-fence, by proving that complainant had acted incontinently, and forfeited her right to recover in this case, if she ever had any. To establish this fact, they introduced an elderly woman. She .states, that after her return from the mountains, where she liad gone to see her children, she fell in company with the complainant, at. the house of her brother, (they being total strangers) that they entered into conversation, relative to the courtship, marriage, &c. between the complainant and defendant ; and that the complainant immediately unbosomed herself to the witness, by telling her the whole of the transactions ; and also informing her, that Michael Detail's property was the only inducement to her marrying him. She further states, for the purpose of creating a suspicion of incontinence, -that Mrs. Bcvall complained of being sick, and retired to her bed. That a man of* the name of Farrow entered the room, and that ho staid there some short time, and upon witness going to the door to carry some water, she saw him sitting on a trunk and leaning on the bod, in which Mrs. Dcval was lying. This appears to he the principal fact, to establish a belief of her infidelity towards her husband. Although Ihe character of this witness was not impeached, the court from her demeanor and other circumstances, cannot avoid entertaining very strong doubts with respect to her veracity. That a woman of the sense and understanding of the complainant, should, to a total stranger, incautiously, make a confidant of a woman, of the appearance and ignorance of the witness, is to the court improbable and incredible $ and that, at the eve too, of instituting a suit, wherein «lie must have known, her every word and action would be used against her. But admitting the facts to he as the witness has sworn, it raises no presumption, that the complainant was enga *82 ged in a meretricious- intercourse, for there are few per-sous so abandoned and lost to every sense of shame, as to commit an act of that kind, in open day light, in a house where other persons were in the next adjoining rooms, and who might, at any moment, become witnesses of their lewdness. Great reliance was placed by the counsel of the defendant on the influence her con-’ duct would have, relative to her endeavoring to procuro from the defendant his papers. It appears from the witnesses, that ho took a small box, containing his most valuable papers, and put it into his pocket. He being in a state of intoxication, she was advised by one of the witnesses then present, to endeavor to obtain them from him. She did so, and it seems some scuffling ensued, and he said she struck him; hut neither of the witnesses saw it, and say that if she did, it must have been very slightly. She afterwards again endeavored to obtain the papers, but was repulsed. It appears from the evidence that her only object was the procurement of the papers, and I do presume that no person will entertain a doubt but it was an act of prudence for her so to do, from an intoxicated husband, who might easily lose or mislay them, so that the court does not think her conduct in this affair sufficient to justify, or even excuse the severity used to her afterwards. After the occurrence of this transaction, the defendant on account thereof, obtained a warrant against her; and her solo object in going from home, which gave rise to the idea of her having eloped, was to procure security to the aforesaid warrant, which she was advised to do by one of the witnesses. In fact, there is not the least manifestation of any intention to elope apparent to the court from any of the testimony. The contrary evidently appearing from her importuning her sis.ter to stay and take care of the house, until her return, which was immediately on her procuring the requisite security. Although the court could furnish abundant reasons for entertaining the cause, and decreeing alimony, it is deemed unnecessary so to do, inasmuch as the defendants by their answer havo admitted the jurisdiction of the court. All the law, therefore, introduced re- *83 • iative thereto, is considered by the court as unnecessary to be replied to. The counsel for the tlefendnant further contend, that the trust deed should be set aside on account of deceptive acts being used to obtain it: also, on account of the incapacity of Michael Derail to make his own contracts j and lastly, for want of reciprocity. As to the first exception, there has not been a particle of testimony to support it. It appears clearly to tbc court,, that the contract was entered into at the express solicitation of the defendant j that in fact, he proposed to make over all his property, the acceptance of which offer was rejected by complainant. As to the second objection, the whole of the witnesses concur in saying, that although he is not a man of very good capacity, he is. competent to make his own contracts, and is careful of his interest; and the court cannot raise an equitable incapacity, where there is a legal capacity. As to the third point, the cornt; is clearly of opinion that it cannot prevail. All marriages, almost, are entered into on one of two considerations, that is love or interest: and the court is induced to believe the latter is the foundation of most of them. If the complainant in this case chose to marry a very aged man, and if she has made a sacrifice of herself on the altar of interest, it is not for this court to say she had not a right so to do. If, on the other hand, the defendant chose to dispose of a pari of his property, for which he had little or no use, and which he kept only for the use and advantage of those, who might not have ¡banked him for it, to a person to take care of him in his days of imbecility, and one who would sooth his cares at the close of life, he also had a right to do so, nor will the court interfere to prevent him. The court, therefore, cannot see that there is any want of reciprocity in this contract, on the part of the defendant; but as both parties were capable in law to contract, and actually have contracted, the court will compel them to a performance thereof.
It is therefore ordered and- decreed, that .the trust, estate be vested in a trustee or trustees, for the benefit of the complainant,; and that the profits, cmolamenls or in- *84 tercsts arising therefrom, be appropriated tober maim. tenance, until the said Michael Bevall shall consent to co-habit with her, and treat her as becomes a man to treat his wife. It is further ordered, that one half the costs in this case, be paid by the said Michael Bevall; the other half to be paid out of the trust estate. This decree in sio wise affecting any interest, which third persons may have in the property, included in the trust deed. Ami it is also further decreed, that the writ of no exeat and subsequent proceedings thereon, be continued, until the trustee heroin referred to, shall take the trust property into his possession, and that they then he dissolved.
Bowie for appellant, Goodwin for respondent,
From this decree an appeal was made on the following grounds :
First. — That the court over-ruled a motion to strike out the prochein ami, on the ground of his insolvency, which was abandoned at the hearing.
Second, — Because the court refused to let the defendant into evidence of the lewd conduct of the complainant before marriage, as presumptive evidence of her subsequent incontinence.
Third. — That from the circumstances- of the case complainant was not entitled to alimony.
Fourth.' — 'That alimony can only be decreed as an incident to some other proceeding, which the court said could only be taken advantage of on demurm*.
Fifth.' — That there was no proof of hazard as to the property, and á positive denial in the . answer by Jane Dévall and Jacob M. Bevall, of any threat or intention to interfere with it, yet the court ordered that the writ of nc exeat and proceedings thereon should be continued.
The appeal was heard by chancellors James, Thompson, Desaussurc and Gaillard, and after argu-meat the decree of the circuit court was affirmed.